**Ex parte Ronald Curtis CHAMBERS.**

**No. 69,260.**

Court of Criminal Appeals of Texas,
En Banc.

Dec. 5, 1984.

Rehearing Denied March 27, 1985.

Vincent W. Perini, Dallas, for appellant.

Henry Wade, Dist. Atty. and Ruth Lown and Gregg Long, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This is a post-conviction habeas corpus application filed pursuant to Art. 11.07, V.A.C.C.P. The application was ordered filed and set for submission "on the allegations that the admission of Dr. Grigson's testimony violated the applicant's rights under the Fifth and Sixth Amendments to the United States Constitution."

Petitioner was convicted of capital murder and the death penalty was assessed. On appeal the conviction was affirmed. *Chambers v. State,* 568 S.W.2d 313. It is now contended that the psychiatric testimony used during the punishment phase of the trial was improperly obtained through an interview of appellant by Dr.

Grigson without appellant having been advised of his Fifth Amendment privilege. Reliance is placed on *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359, which was decided after appellant's trial and appeal. In *Smith* the Court held:

"The considerations calling for the accused to be warned prior to custodial interrogation apply with no less force to the pretrial psychiatric examination at issue here. Respondent was in custody at the Dallas County Jail when the examination was ordered and when it was conducted. That respondent was questioned by a psychiatrist designated by the trial court to conduct a neutral competency examination, rather than by a police officer, government informant, or prosecuting attorney, is immaterial. When Dr. Grigson went beyond simply reporting to the court on the issue of competence and testified for the prosecution at the penalty phase on the crucial issue of respondent's future dangerousness, his role changed and became essentially like that of an agent of the State recounting unwarned statements made in a post-arrest custodial setting. During the psychiatric evaluation, respondent assuredly was 'faced with a phase of the adversary system' and was 'not in the presence of [a] person [ ] acting solely in his interest.' [*Miranda v. Arizona*, 384 U.S. 436] at 469, 16 L.Ed.2d 694, 86 S.Ct. 2602, [at 1625] 10 Ohio Misc. 9, 36 Ohio Ops.2d 237, 10 A.L.R.3d 974. Yet he was given no indication that the compulsory examination would be used to gather evidence necessary to decide whether, if convicted, he should be sentenced to death. He was not informed that, accordingly, he had a constitutional right not to answer the questions put to him.

"The Fifth Amendment privilege is 'as broad as the mischief against which it seeks to guard,' *Counselman v. Hitchcock*, 142 U.S. 547, 562, 35 L.Ed. 1110, 12 S.Ct. 195 [197] (1892), and the privilege is fulfilled only when a criminal defendant is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to

suffer no penalty ... for such silence.' *Malloy v. Hogan*, 378 U.S. 1, 8, 84 S.Ct. 1489 [1493,] 12 L.Ed.2d 653 (1964). We agree with the Court of Appeals that respondent's Fifth Amendment rights were violated by the admission of Dr. Grigson's testimony at the penalty phase."

When the district court originally ruled on the application for habeas corpus, it found appellant had not made a trial objection on the matter, and alternatively found that *Estelle v. Smith* should not be given retroactive application. On the basis of these findings the district court recommended that relief be denied.

This Court in other post-*Smith* cases involving trials occurring before the *Smith* decision has found the failure to object did not constitute a waiver, and has given retroactive application to the *Smith* decision. *Mays v. State*, 653 S.W.2d 30; *Ex parte Demouchette*, 633 S.W.2d 879. We therefore rejected the findings upon which the district court recommended that relief be denied. The record before us, however, did not clearly reflect whether or not the requirements of *Estelle v. Smith* were violated in this case. We therefore directed the district court to conduct a hearing to develop the facts on the matter, and then to enter findings of fact. A hearing has been held and the record and new findings by the trial court have been received by this Court.

In again recommending that relief be denied, the trial court relies on the fact that during consultation with petitioner, at some indefinite date before he was interviewed by Dr. Grigson, his trial attorneys advised him to speak to no one except counsel, and specifically instructed him not to talk to any psychiatrists because such evidence could be used against him. We do not agree that such consultation with counsel at some indefinite date prior to the interview with Dr. Grigson satisfies the requirements of *Estelle v. Smith*, supra. Advising a client not to talk is *not* the same as informing him at the beginning of

interrogation that he has "a constitutional right not to answer the questions put to him." *Estelle v. Smith*, supra. The testimony of Dr. Grigson at the hearing in the trial court is uncontradicted: petitioner was not advised that he had a constitutional right not to answer the questions put to him by Dr. Grigson. See *Mays*, supra.

Relief is granted. The conviction is set aside and petitioner is ordered remanded to custody of the Sheriff of Dallas County to answer the indictment pending against him in Cause No. F75–4282–K.

It is so ordered.

CAMPBELL, Judge, concurring.

■ Applicant was convicted in 1976 of capital murder. In this writ of habeas corpus he challenges the conviction on the basis that he was deprived not only of his Fifth Amendment right as elucidated in the majority opinion, but also of his Sixth Amendment right to counsel. While I concur with the judgment of the Court reversing applicant's conviction, I am also of the opinion that his Sixth Amendment rights were clearly violated.

The evidence adduced at the evidentiary hearing was uncontradicted that applicant had both appointed and retained counsel at the time that Dr. Grigson was appointed to evaluate applicant. The record is also undisputed that Dr. Grigson evaluated the applicant on the very same day that the trial judge ordered him appointed and that applicant's lawyers were not given advance notice that Dr. Grigson would evaluate their client; nor were counsel given the opportunity to consult and advise applicant regarding Dr. Grigson's appointment and evaluation. Finally, applicant carried his burden in showing that counsel was unaware that Dr. Grigson's appointment and evaluation would encompass the issue of petitioner's "future dangerousness".

The United States Supreme Court in *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) unanimously held that a person under indictment for capital murder, who has counsel representing him, is entitled under the Sixth Amendment to consult with his attorneys prior to any psychiatric evaluation. Under the Supreme Court's holding in *Smith*, counsel representing a capital defendant is entitled to be made aware of a pending psychiatric evaluation and to advise and prepare his client prior to any evaluation occurring. *Estelle v. Smith*, supra, at 476, 101 S.Ct. at 1879. (concurrence, Rehnquist, J.). The facts in this case are indistinguishable from *Smith* insofar as petitioner's Sixth Amendment claim is concerned.

This Court in capital murder cases has uniformly followed the teachings of *Smith*. *Ex Parte Demouchette*, 633 S.W.2d 879 (Tex.Cr.App.1982); *Fields v. State* 627 S.W.2d 714 (Tex.Cr.App.1982); *Mays v. State*, 653 S.W.2d 30 (Tex.Cr.App.1983). There is no question but that *Smith* is to be applied retroactively. *Battie v. Estelle*, 655 F.2d 692 (5th Cir.1981); Cf. *Fields*. supra, (McCormick, J. dissenting.)

■ The issue that requires further development in the majority opinion is whether the applicant has in fact waived any constitutional error by failing to timely and properly object at trial to the admission of the evidence in question. This Court has, in the past, not applied a contemporaneous objection rule to this type of error. See *Demouchette*, supra, *Fields*, supra, and *Mays*, supra. Recently, however, this Court has applied a contemporaneous objection rule in a non-capital direct appeal. *Parker v. State*, 649 S.W.2d 46 (Tex.Cr. App.1983).

In *Parker*, supra, Presiding Judge Onion applied what he perceived to be a "waiver of constitutional error" rule enunciated by the United States Supreme Court in *Engle v. Isaacs*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), and held that the fact that an objection may have been futile at the time of Parker's trial, such futility did not necessarily constitute cause for Parker's failure to object.

In *Engle v. Isaacs*, supra, the Supreme Court held that before a federal court exercises it's habeas corpus jurisdiction pursuant to 28 U.S.C.A. 2254, interests of comity

demand that a petitioner demonstrate "cause and prejudice" if he has failed to follow State procedural rules, such as failing to timely object. If a federal court finds that there has been a "state procedural default" then a petitioner must demonstrate 'cause and prejudice" for the default. In *Engle* the petitioner argued that any objection on his part would have been futile; the Supreme Court rejected the futility of an objection as "cause". However the Court specifically left open the question of whether the novelty of a constitutional claim would ever establish "cause". *Engle*, supra, at 130, 102 S.Ct. at 1573.

The question left open in *Engle* was answered just last term in *Reed v. Ross,* —— U.S. ——, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984). In *Reed,* supra, the United States Supreme Court established that, *as far as exercise of federal habeas jurisdiction by a federal court reviewing a state criminal conviction, "cause" is established when the novelty of a constitutional right could not reasonably have been known by competent counsel at the time of trial.* (emphasis added). That Court specifically held "that where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures." Id., 104 S.Ct. at 2910.

I submit that under the Supreme Court's analysis, applicant in the case sub judice would have a forum in federal court. The constitutional violation here challenged could not reasonably have been known to counsel at the time of trial since it was not a known right until six years after the trial.

Of equal significance to this writer is *this* State's own procedural default rule. While the teachings of *Engle* and *Reed* may be instructive, they are in no way binding on this Court. The rules enunciated in *Engle v. Isaacs* and *Reed v. Ross* concern the exercise of federal habeas jurisdiction once a State procedural default has been shown. See *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). I do not interpret these cases as attempting to impose a federal procedural waiver standard to be used by State courts.

This Court has for at least twelve years held that a defendant has not waived his right to assert a constitutional violation by failing to object at trial if at the time of his trial the right had not been recognized. *Ex Parte Taylor,* 484 S.W.2d 748 (Tex.Cr.App. 1972); *Ex Parte Sanders,* 588 S.W.2d 383 (Tex.Cr.App.1979); *Ex Parte Casarez,* 508 S.W.2d 620 (Tex.Cr.App.1974); *Boulware v. State,* 542 S.W.2d 677 (Tex.Cr.App.1976); *Cuevas v. State,* 641 S.W.2d 558 (Tex.Cr.App.1982). In view of these cases decided by this Court and in view of the extension by the Supreme Court of the doctrine in *Engle v. Isaacs* to its current posture in *Reed v. Ross,* I would reaffirm the holding in *Cuevas,* supra, that "where a defect of constitutional magnitude has not been established at the time of trial, the failure of counsel to object does not constitute waiver", and I would overrule *Parker,* supra, to the extent that it is in conflict.

With the foregoing in mind, I concur with the judgment of the Court.

W.C. DAVIS, CLINTON, McCORMICK, TEAGUE and MILLER, JJ., join this opinion as well as the majority opinion.